## C. G. Aschmann & Co., to use of Caesar & Co., v. Banks Bros.

*Sales — Rescission for fraud — Fraudulent debtor's attachment—Amendment of statement.*

1. Where a sale has been induced by misrepresentations by the purchaser, the vendor may rescind the agreement and maintain a fraudulent debtor's attachment for the value of the goods sold before the period of credit allowed by the agreement has expired.

2. Where a motion to dissolve the attachment has been overruled, the vendor may prove at the trial the misrepresentations which gave rise to the right to rescind the agreement.

3. Where the original statement of claim avers that the market price or value of the goods was the same as the contract price, the trial judge commits no error in allowing an amendment which bases the cause of action on the value of the goods as distinguished from the contract price.

Motions for judgment *non obstante veredicto* and for new trial. C. P. No. 2, Phila. Co., Dec. T., 1925, No. 345.

*David S. Malis*, for plaintiffs; *Furth, Singer & Bortin*, for defendants.

LEWIS, J., Oct. 30, 1926.—Counsel for the defendants present for our consideration four questions in connection with their motions for judgment *n. o. v.* and a new trial, the jury having returned a verdict in favor of plaintiffs. The nature of the case as well as some of its facts will be found in an opinion rendered when the matter was before us on preliminary questions (Caesar & Co. *v.* Banks Bros., 7 D. & C. 212). The points now raised are:

1. Where a suit is begun by a writ of attachment under the Act of 1869 on a contract before the term of credit provided for therein has expired, must not a verdict be directed for the defendants?

2. Where the plaintiff alleges a rescission on the ground of fraud but begins his suit by an attachment under the Act of 1869, has he not affirmed the contract and bound himself by its terms?

3. If a plaintiff alleges a rescission and is precluded by law from showing a right to rescind, must not a verdict be entered for the defendant?

4. Where the plaintiff has begun a cause of action under the Act of 1869, may he, at the time of trial, amend his statement of claim to show a cause of action which he could not have begun by attachment?

The first two questions can be considered together. It is plaintiffs' position that, having been induced by misrepresentations to sell the goods to defendants, they have the right to rescind the agreement under which the goods were sold and sue for their value; having a right to rescind and having rescinded, their further contention is that they are not bound by the provision in the contract that credit was to be extended for sixty days from the sale.

The defendants argue that by bringing an attachment under the Act of 1869 the plaintiffs have in effect sued in *assumpsit*, and have, therefore, "affirmed the contract" and become bound by all of its terms. They reach this position by reasoning that a fraudulent debtors' attachment lies only for a debt due in a sum certain, and, stated in their language, "since the proceeding is based upon a debt due, it must, of course, lie in *assumpsit.*"

This argument is ingenious, but it is also specious. It certainly would be a novel proposition to say that one who issues an attachment under the Act of 1869 and its amendments, on the ground that a debt was fraudulently incurred, thereby "waives the fraud." One could as readily say that a person who brings an action for specific performance after breach of a contract thereby waives the breach. It is clear that the fraud, far from being waived,

is the very basis of the attachment. To have any support for such an argument it is necessary to denote the attachment as an outright action of *assumpsit*; yet the legislature did not so name it when the Acts of 1869 and 1887 were passed. It is a proceeding "of a hybrid character" (Harbert *v.* Gormley, 115 Pa. 237), peculiar unto itself, neither *assumpsit* nor trespass. True, it lies only to recover a debt then due (Coaks *v.* White, 11 W. N. C. 271), but it does not necessarily follow from this that it is an action of *assumpsit.*

Even if it should be called an action of *assumpsit*, it must be kept in mind that the plaintiffs here seek to recover the value of the goods sold. We are in accord with the statement in 2 Williston on Sales (2nd ed., 1924), § 647, as being directly in point here: "The transaction, if rescinded, must be rescinded as a whole. Therefore, it is generally held that a seller who has sold goods on credit cannot, because the sale was induced by fraud, sue *for the price* before the period of credit has expired. In some jurisdictions, however, either on the ground that the agreement for credit is a separate collateral agreement, or for some other reason, immediate recovery is allowed. Though it seems impossible to support the maintenance of an action *on the contract for the price* before the period of credit has expired, there seems good ground for allowing the plaintiff at once to rescind the contract and, instead of suing in trover, to waive the tort and sue in *assumpsit*, not for the price of the goods, but *for their value.*" (See, also, section 593.) There is even better ground for the action where, as here, the goods have been disposed of by the defendants.

The case of Jones & Co. *v.* Brown, 167 Pa. 395, is confidently relied on by defendants. That was an attachment under the Act of 1869 "to recover the price of goods sold and delivered." It appeared that the plaintiff had accepted in payment of the goods three promissory notes, none of which was payable at the time the attachment issued. The plaintiff averred that he was induced to extend the time of payment of the account and to accept the notes because of false representations, and that, in view of the fraud, he was entitled to rescind the contract of extension and proceed at once to recover *the purchase price of the goods.* The Supreme Court wrote no opinion, but President Judge Thayer's opinion stated the plaintiff was attempting to "blow hot and cold." "If the goods were obtained by the defendant by means of fraudulent representations, the plaintiff has a right to rescind the sale, in which case he might bring replevin for the goods themselves, or an action of trover, in which he would recover their value in damages. But it is plain that if he elects to rescind the contract, he cannot bring *assumpsit* for the price, because the same contract which fixes the price entitles the defendant to the credit which it was agreed he should have. . . . It is manifest, however, in the present case, that the plaintiff has not elected to rescind, but that his action is brought upon the contract, for he has not only brought *assumpsit* for the price, but demands also interest upon the notes, and declares in his affidavit that the suit is 'to recover the purchase price.' "

We do not agree with all that is said by the learned president judge, but we do not, therefore, have to disagree with the conclusion reached, which was that the attachment should be dissolved. The distinction between that case and the one before us is explained by Professor Williston in the quotation given above. One other important distinction is to be noted. In Jones & Co. *v.* Brown the plaintiff averred he was induced by fraud *to extend the credit for the goods;* here it was averred and proved that by fraud the plaintiffs were *induced to sell the goods.* Then, too, the plaintiffs here might have

been more nearly within that decision had it not been that they amended their statement so as to claim the market price of the goods instead of the contract price; in addition, they disclaimed any right to interest.

It is our opinion, therefore, that by bringing a fraudulent debtors' attachment the plaintiffs did not thereby necessarily affirm the contract and become bound by all of its terms, and that, having rescinded the contract, they could bring their action before the period of credit expired.

The defendants say, however, that the plaintiffs are precluded by law from showing a right to rescind. This argument is as fallacious as that just discussed, and not quite so ingenious. Of course, it has often been held that when the court has passed upon and overruled a motion to dissolve an attachment, the question of fraud is then settled and cannot later be submitted to the jury: Walls v. Campbell, 125 Pa. 346; Slingluff v. Sisler, 196 Pa. 121. It is a manifest *non sequitur*, however, to conclude from this rule that the plaintiffs herein cannot at the trial offer proof that they had a right to rescind the contract and of the misrepresentations which gave rise to the right to rescind. This would be tantamount to saying either that the plaintiffs must, upon a rule to dissolve an attachment, establish once and for all that they had a right to rescind the contract (a rule to dissolve has no such far-reaching effect on the subsequent trial of the case, for it is solely "in the nature of a motion for summary relief addressed to the sound discretion of the court:" Potter v. Graham, 8 Pa. Superior Ct. 199); or that the plaintiffs are precluded from proving their entire case at the trial; this latter they must do. "The attachment is merely part of the process to secure the alleged fraudulently contracted debt in advance of obtaining judgment for the amount thereof; and, whether the attachment was dissolved or not, it was incumbent on the plaintiffs to establish their claim against the defendant:" Young, Smyth, Field Co. v. Miller, 174 Pa. 639. Conceding the question of fraud to have been settled by the disposition of the rule to dissolve, still the plaintiffs may show the misrepresentations by the defendants upon which they rely, not merely for the purpose of showing fraud, but to establish their right to rescind the contract.

The theory on which defendants attack the action of the trial judge in permitting the plaintiffs to amend the statement of claim is that the cause of action was thereby changed to one for which an attachment could not have been issued at the outset, since the suit then became one for the market value of the goods, which, defendants say, was not a sum certain or a liquidated amount. It is sufficient for us to say that we do not agree with this statement, as it would lead us to the conclusion that a fraudulent debtors' attachment would not lie, or its use would at least be greatly restricted, where there had been an expressed contract which the plaintiff has elected to rescind because of the defendant's fraud. Under the authorities he cannot issue an attachment for the contract price without being bound by the terms of the contract. According to defendants' theory here, unsupported by any citations in point, an attachment would not lie to recover the value of the goods. The market price or value of the goods is just as much a debt within the meaning of the act of assembly as the contract price. The plaintiffs clearly did not change their cause of action, for in the original statement of claim they had set forth all of the facts showing the rescission of the contract for fraud and the extent of the amendment was merely to make the measure of their recovery the value of the goods instead of the contract price. Moreover, in the statement of claim as originally filed, it was stated that the market price or value of the goods was the same as the contract price, so

that the defendants were put under no disadvantage by the allowance of the amendment at the trial.

In conclusion, we call attention to the fact that there is no defence to any portion of this claim, defendants' only contentions being that the debt was not incurred by fraud and that the period of credit had not expired at the time suit was brought. The legal questions are of a purely technical nature, and we have no regret that the authorities do not require that they be resolved in defendants' favor.

The motions for judgment *non obstante veredicto* and for a new trial are dismissed.